UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JAMES WHITE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 4:08CV01763 AGF |
| | ) |
| MICHAEL ASTRUE, Commissioner of | ) |
| Social Security Administration, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

This action is before this Court[1] for judicial review of the final decision of the Commissioner of Social Security finding that Plaintiff James White was not entitled to disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, or to supplemental security income under Title XVI of the Act, id. §§ 1381-1384f. For the reasons set forth below, the decision of the Commissioner shall be reversed and the case remanded for further development of the record and reconsideration.

Plaintiff, who was born on May 12, 1959, filed his applications for benefits on August 10, 2006, claiming a disability onset date of November 19, 2005, at the age of 49, due to osteoarthritis of the left knee with deformity, status post fracture of the pelvis, and degenerative joint disease. After his applications were denied at the initial administrative level, Plaintiff requested a hearing before an administrative law judge ("ALJ"), and such

---

[1] The parties have consented to the exercise of authority by the undersigned United States Magistrate Judge under 28 U.S.C. § 636(c).

a hearing was held on July 11, 2008. By decision dated July 22, 2008, the ALJ found, based on the testimony of a vocational expert ("VE"), that Plaintiff could not perform his past relevant work, but that there were other jobs he could perform and that he therefore was not disabled under the Act. Plaintiff's request for review was denied on October 10, 2008. Plaintiff has thus exhausted all administrative remedies, and the ALJ's decision of July 22, 2008, stands as the final agency action now under review.

Plaintiff argues that the ALJ's decision is not supported by substantial evidence in the record as a whole. Specifically, Plaintiff argues that in assessing Plaintiff's residual functional capacity ("RFC"), the ALJ erred in discounting the opinion of Plaintiff's treating physician (Yusef Chaudhry, M.D.) in favor of the opinion of a one-time examining consulting physician (Musaddeque Ahmad, M.D.); the ALJ erred in failing to develop the record by re-contacting Plaintiff's treating physician; and the VE's testimony was unreliable because it was based on a hypothetical question that did not capture the true extent of Plaintiff's impairments.

**<u>Work History and Application Forms</u>**

The record indicates that Plaintiff did not work in 1988. In 1989, Plaintiff earned $2,683. On January 2, 1990, Plaintiff was involved in a truck accident, and he did not work at all that year. From 1991 until 1992 Plaintiff worked as a maintenance man for a shoe company full-time for $5.50 per hour. He worked as an installer for a fencing company from 1993 through 1995, full-time, earning $7.00 per hour. He worked for an asphalt paving company hauling asphalt from 1995 through 1998. He worked at some

2

"temp jobs" in 1999, and did not work in 2000. From 2001 through 2005, he again worked full-time for the asphalt company, earning $13.02 per hour. Plaintiff worked there for two days in 2006, earning $208, but was then let go because he "could not perform [his] job duties." (Tr. 90). Earnings records show annual earnings under $10,000 from 1976 through 1994, except for 1979 when Plaintiff earned $10,500; and between $8,000 and $15,000 from 1995 through 2006, except for 1999 and 2000, when he earned under $2,000. (Tr. 101.)

On his Disability Report, dated August 25, 2006, submitted with his applications for benefits, Plaintiff wrote that he could not stand for more than 30 minutes without a lot of pain; that if he sat on the ground, it took him five to ten minutes to get up; and that he was in "a lot of pain all of the time." Plaintiff represented that since November 11, 2005, his medical condition caused him to work fewer hours. He also represented that one doctor prescribed Motrin for his pain, but he did not have the money to fill the prescription. (Tr. 119-26.)

On a Function Report dated August 25, 2006, Plaintiff wrote that pain in his legs, knee, pelvis, and back caused him to hobble and limp for a half hour after waking up in the morning; that he spent his days watching TV, reading, playing cards, playing guitar, and sometimes playing a video game; that at night sometimes his knee, back, and pelvis jerked and "hurt like hell" while he was sleeping; that it took him 20 to 25 minutes to get dressed; that he had to hold onto something to take a shower or use the toilet; that he could prepare simple meals for himself, such as sandwiches and frozen dinners; and that

he could do his own laundry, wash dishes, and vacuum but could not stand or walk for long without bad pain; that he went grocery shopping by getting a ride from his parents, as he could not drive; and that he could walk about 100 steps before needing to rest. (Tr. 128-35.)

Plaintiff represented that he did not have problems getting along with others and that he could follow instructions, maintain attention, and handle stress. On another part of the form, Plaintiff wrote he had fallen off of a roof when he was 13 years old causing injury in his left knee that went undetected. The truck accident in 1990 caused his pelvis to break in ten places and required two plates and 13 bolts to be inserted. He wrote that his back was never the same. Plaintiff also states that he was involved in an accident with a company vehicle on June 25, 2001.[2] (Tr. 128-35.)

**Medical Record**

The record includes a Stipulation for Compromise Settlement from the Missouri Department of Labor. The stipulation indicated that Plaintiff suffered approximately 10% disability in his left knee. (Tr. 87.)

On September 25, 2006, state consultant Dr. Ahmad, an internist, examined Plaintiff for a disability evaluation in connection with his present applications for

---

[2] The record does not contain any information regarding this accident other than one mention of it on Plaintiff's Function Report dated August 25, 2006, and a Stipulation for Compromise Settlement for the Missouri Department of Labor. On Plaintiff's Function Report, he reports the date of this accident as June 25, 2001. The Stipulation for Compromise Settlement reports the date as June 25, 2002.

benefits. Dr. Ahmad recounted a history of fracture in his left femur for which he had undergone open reduction internal fixation following the 1990 motor vehicle accident. Dr. Ahmad reported that Plaintiff complained of pain in his knee and lower back that had prevented him from performing his job as an asphalt laborer. Dr. Ahmad noted that Plaintiff's current medication was Tylenol with codeine. Dr. Ahmad noted an abnormal gait, left knee pain with deformity and a 40% decrease in range of motion, lower back pain, and alcohol and tobacco abuse, noting that Plaintiff drank heavily almost every day and smoked one to two packs of cigarettes per day. Dr. Ahmad assessed the strength of Plaintiff's left lower extremity at 4/5. Other than his alcohol consumption, Plaintiff was described as having no significant limitations of his mental functioning and no evidence of depression or anxiety. Dr. Ahmad found no neurological deficit, and no clubbing or edema in Plaintiff's extremities. He opined that Plaintiff could sit for six to eight hours in a workday; stand for up to two hours in an eight-hour workday; walk 1/4 of a mile; lift up to 50 pounds; carry 20 pounds; and travel without limitations. (Tr. 156-61.)

The record also contains an RFC assessment dated October 6, 2006, which indicated that Plaintiff could stand and/or walk for at least two hours in an eight-hour workday; occasionally lift ten pounds; frequently lift less than ten pounds; sit with normal breaks for a total of six hours in an eight-hour workday; and push and pull without limitation. This form was completed by A. Blattel whose name is typed in the space marked "Medical Consultant's Signature," but the record indicates that she was a state agency "counselor" and not a medical source. (Tr. 159, 162-67.)

Plaintiff saw Dr. Chaudhry for treatment related to musculoskeletal problems on August 3, 2006; February 5, 2007; May 3, 2007; May 15, 2007; June 14, 2007; July 17, 2007; August 14, 2007; September 14, 2007; October 15, 2007; and March 10, 2008. Treatment notes from these visits are hand-written and nearly illegible, but indicate that Plaintiff was experiencing pain in his back and lower extremities, and that Dr. Chaudhry prescribed Tylenol 3 and Motrin on each of these visits.

May 3, 2007 radiographic scans of Plaintiff's spine and knees indicated postoperative changes in the right iliac bone, "minimal" osteoarthritic changes with slight narrowing of the disc space between L5-S1, and spur formation at the L5 level. The images of his left knee showed "severe" osteoarthritic changes with narrowing of the joint space, spur formation at the superior part of the patella, narrowing of the patellofemoral joint space, and presence of joint effusion. The images of his right knee showed "minimal" osteoarthritic changes with spur formation at the superior part of the patella, presence of postoperative changes at the distal femur, small joint effusion, and vascular calcification. (Tr. 171-79.)

On April 10, 2007, the Missouri Department of Social Services reversed an initial denial of Plaintiff's application for Medical Assistance Benefits (Medicaid) and determined that Plaintiff was permanently and totally disabled as that term was defined by the Missouri Family Support Division. Plaintiff's "medical condition" was also determined to meet or equal the listing for disability at 20 C.F.R., Chapter III, § 404.1523. This section is entitled "Multiple Impairments," and provides that an

6

individual's condition will be considered severe based upon the combination of his impairments, even if none of his impairments, considered separately, are severe. The state agency was ordered to explore whether Plaintiff was entitled to Medicaid retroactively to the date of his initial application.

The copy of the state decision in the record before the Court, and before the ALJ, is incomplete, consisting only of the one-page notice to Plaintiff and the last two pages of a six-page decision.[3] These two pages indicate that the state agency considered nine (A through I) impairments, only two of which -- pancreatitis and seizures -- are noted on the pages in the present record. (Tr. 168-70.)

Due to a DUI conviction, Plaintiff was incarcerated from November 2007 to March 6, 2008; there is no medical evidence in the record covering this time period. (Tr. 32).

On March 10, 2008, Dr. Chaudhry examined Plaintiff and noted that his paraspinal muscles were "spastic and tender on palpation"; that there was no clubbing or edema in Plaintiff's extremities; that his neurological examination was "non-focal"; and that there was no muscle pain, spasms, or arthritis. (Tr. 196-97.)

Also on March 10, 2008, Dr. Chaudhry completed an Arthritis RFC Questionnaire in which he indicated in checkbox format that Plaintiff suffered from reduced range of motion, swelling, joint deformity, joint instability, and crepitus in his left knee. Dr.

---

[3] This notice and decision were designated as Exhibit 6F before the ALJ -- a three-page exhibit.

Chaudhry also indicated that depression and anxiety were affecting Plaintiff's pain levels. He indicated that Plaintiff would need to take unscheduled breaks every 15 minutes during an eight-hour workday. Dr. Chaudhry indicated that Plaintiff could not twist, stoop, bend, crouch, climb stairs, or lift and carry objects, and was somewhat limited in his ability to grasp and handle objects with his hands and reach with his arms. He further indicated that Plaintiff's impairments would cause him to miss work on an average of more than four days per month. (Tr. 189-97.)

**Evidentiary Hearing of July 11, 2008 (Tr. 26-57 )**

Plaintiff, who was represented by counsel, testified that he was 49 years old, had obtained his GED when he was 20, and could read and write. He stated that he lost his driver's license three years prior to the hearing, after he was charged with the DUI. Plaintiff explained that his left knee was originally injured when he fell off a roof as a teenager. The injury never fully healed, and his knee required two subsequent operations, performed at age 27 and age 30. Plaintiff claimed that his left knee remained swollen and arthritic since the second operation.

Plaintiff stated that he had not discussed a knee replacement with any of his doctors, and that he had been unable to receive treatment recently beyond basic checkups and pain medication because he had lost his Medicaid coverage after being incarcerated and was currently reapplying for such coverage.

Plaintiff described his past work as a laborer, stating that he was, "very well capable of doing it back then, but wouldn't be able to do that no more." Plaintiff

8

believed the arthritis and swelling in his left knee had worsened since he worked as a fence installer and asphalt laborer.  He also indicated that the pain in his back, a result of the metal plates that had been installed after he shattered his pelvis in the January 1990 truck accident, had increased recently.

Plaintiff described his current medical problems as pain in his left knee and back, and poor circulation below his knees that prompted him to elevate his feet as much as possible.  He stated that his daily activities were limited to sitting with his feet propped up while watching TV, and cleaning his room.  He currently lived with his parents for financial reasons.  He was taking Tylenol 3 for pain and Robaxin to treat nerve spasms.  Plaintiff said he experienced constant pain in his back and knee, coupled with occasional soreness in his feet due to poor circulation.

Plaintiff testified that he left his job in November 2005 as a laborer for the asphalt company at the end of the asphalt season, and when he attempted to return to work in April 2006, he was told that he could no longer do his job.  He currently could walk for ten minutes and stand for a maximum of 20 minutes at a time.  He had no problems sitting, other than an occasional need to move around in order to maintain his circulation.  He did not have any problems with mental comprehension or social interaction.  Plaintiff stated that he was no longer drinking "much," that he still played the guitar, and that he played video games with his brother.  He stated that he could lift approximately 25 to 30 pounds.

The ALJ observed that Plaintiff had a cane with him, and Plaintiff stated that he

used it all the time when he left the house.  Plaintiff stated that he had trouble sleeping if he did not have his pain medication, and that he was running out of it because he had not seen a doctor for the past two months, due to financial constraints.  Plaintiff stated that he was able to perform some household chores, including vacuuming, laundry, cleaning, limited cooking, and limited yard work.  His hands would get stiff, but "loosened up after while."  He testified that he attended Alcoholics Anonymous meetings once a week, and that standing or walking aggravated his pain.

After the VE reviewed Plaintiff's past work, the ALJ asked the VE to consider an individual with Plaintiff's vocational factors (age, education and work experience) who was limited to lifting and carrying ten pounds; standing and walking no more than two hours out of eight; sitting no more than six hours out of eight; and occasional climbing of stairs and ramps.  The individual could never climb ropes, ladders, or scaffolds; could not push and pull with his left foot; had to avoid exposure to unprotected heights and hazards of machinery; and required a cane to assist with ambulation.  The VE testified that such an individual could not perform Plaintiff's past relevant work, but that there were other jobs that the individual could perform, such as sedentary semiconductor wafer breaker and sedentary cashier, jobs which existed in significant numbers in the national and local economy.

The VE testified that the individual's ability to perform those jobs would not be affected if he required a sit/stand option every 30 minutes, but that no jobs existed in the national economy that met all those qualifications and allowed for "occasional"

unscheduled interruptions during both the workday and workweek.

Upon questioning by Plaintiff's counsel, the VE testified that an individual with the limitations noted in Dr. Chaudhry March 10, 2008 RFC report would not be employable.

**ALJ's Decision of July 22, 2008 (Tr. 12-20 )**

The ALJ found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2010, and that he had not engaged in substantial gainful activity since November 19, 2005, his alleged disability onset date. The ALJ summarized the medical evidence and concluded that while the "findings of examination and imaging study" supported a finding of limitation of Plaintiff's RFC, the "infrequency" with which Plaintiff had sought treatment tended to detract from such a finding. The ALJ also pointed to Dr. Chaudhry's progress notes from Match 10, 2008, which noted no complaints of pain and no spasms. The ALJ found that the record failed to support a finding for the existence of any emotional or mental impairment.

The ALJ determined the Plaintiff had the following severe impairments: osteoarthritis of the left knee with deformity, status post fracture of the pelvis, and degenerative joint disease; but that the Plaintiff did not have an impairment or combination of impairments that met or medically equaled a deemed-disabling impairment listed in the Commissioner's regulations. The ALJ then found that Plaintiff

11

had the RFC to perform sedentary work,[4] except that he would need to be allowed to alternate between sitting and standing positions up to once every 30 minutes; would be unable to perform pushing and/or pulling with the left lower extremity; would be unable to operate foot controls with his left leg; would be unable to climb ropes, ladders, and scaffolding; would only occasionally be able to climb ramps and stairs, balance, stoop, kneel, crouch, or crawl; and would need to avoid all exposure to industrial hazards/heights.

The ALJ pointed out that the injuries to Plaintiff's lower left extremity all occurred prior to his alleged onset date of disability, and that an impairment which was not disabling during working years could not be considered disabling at present without some evidence of deterioration. The ALJ found the record to be non-supportive of a finding of such deterioration. The ALJ found significant "the relative infrequency" with which Plaintiff sought treatment. The ALJ noted that despite an alleged onset date of November 19, 2005, the record did not indicate that Plaintiff pursued treatment until August 2006, and that since August 2006, the record only documented ten occasions on which Plaintiff sought medical care from accepted sources. The ALJ found that Plaintiff's failure to

---

[4] Sedentary work involves lifting no more than ten pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. § 404.1567(a).

more diligently seek treatment during a claimed period of disability tended "to suggest a tolerable symptomatology."

The ALJ found Plaintiff's statements of continued ability to engage in activities of daily living to be significant, pointing to Plaintiff's statements and testimony that he could fix meals, do laundry, perform certain household chores, shop, visit with friends, play video games, play guitar, and play cards. The ALJ stated that the Plaintiff's ability to perform these activities suggested an RFC at odds with a finding of disability. The ALJ also found it to be significant that Plaintiff stopped working in November 2005 due to layoff for seasonal reasons as opposed to medical disability.

The ALJ placed "nominal" weight on Dr. Chaudhry's March 10, 2008 RFC report, which the ALJ found was not supported by the record. The ALJ again pointed to the "infrequency" with which Plaintiff had sought treatment and the non-focal findings of Dr. Chaudhry's March 10, 2008 neurological examination. The ALJ further noted that Dr. Chaudhry's statement indicated manipulative limitations that were not supported by the treatment notes.

The ALJ placed "no weight" on the April 2007 state determination that Plaintiff was permanently and totally disabled. The ALJ stated that the Social Security Administration was required to apply its own regulations in determining disability, and was not bound by the determination of another agency.

The ALJ stated that "the state agency medical consultants" concluded that Plaintiff could perform a slightly reduced range of sedentary work. The ALJ then stated that he

13

"considered" the "administrative findings of fact made by the State agency medical physicians and other consultants" as the opinions of "non-examining expert sources."

The ALJ found that Plaintiff was unable to perform any past relevant work, but that, based upon the VE's testimony, there existed jobs in the national economy that Plaintiff could perform, and that Plaintiff was therefore, not disabled as defined in the Social Security Act, from November 19, 2005, through July 22, 2008, the date of the ALJ's decision.

## DISCUSSION

### Standard of Review and Statutory Framework

In reviewing the denial of Social Security disability benefits, a court must affirm the Commissioner's decision "so long as it conforms to the law and is supported by substantial evidence on the record as a whole." Reed v. Barnhart, 399 F.3d 917, 920 (8th Cir. 2005) (citation omitted). This "entails 'a more scrutinizing analysis'" than the substantial evidence standard. Id. (quoting Wilson v. Sullivan, 886 F.2d 172, 175 (8th Cir. 1989)). The court's review "'is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision'"; the court must "'also take into account whatever in the record fairly detracts from that decision.'" Id. (quoting Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001) (citation omitted)). Reversal is not warranted, however, "'merely because substantial evidence would have supported an opposite decision.'" Id. (quoting Shannon v. Chater, 54 F.3d 484, 486 (8th Cir. 1995).

14

> It is not the role of [the reviewing] court to reweigh the evidence presented to the ALJ or to try the issue in this case de novo. If, after review, [the court] find[s] it possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the denial of benefits.

Wiese v. Astrue, 552 F.3d 728, 730 (8th Cir. Jan. 2009) (citations omitted).

To be entitled to benefits, a claimant must demonstrate an inability to engage in any substantial gainful activity which exists in the national economy, by reason of a medically determinable impairment which has lasted or can be expected to last for not less than 12 months. 42 U.S.C. § 423(d)(1)(A); Barnhart v. Walton, 535 U.S. 212, 217-22 (2002). The Commissioner has promulgated regulations, found at 20 C.F.R. § 404.1520, establishing a five-step sequential evaluation process to determine disability. The Commissioner begins by deciding whether the claimant is engaged in substantial gainful activity. If so, benefits are denied. If not, the Commissioner decides whether the claimant has a "severe" impairment or combination of impairments. A severe impairment is one which significantly limits a person's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1521(a). A special technique is used to determine the severity of mental disorders. This technique calls for rating the claimant's degree of limitations in four areas of functioning: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. Id. § 404.1520a(c)(3).

If the claimant does not have a severe impairment or combination of impairments that meets the duration requirement, the claim is denied. If the impairment is severe and meets the duration requirement, the Commissioner determines at step three whether the

15

claimant's impairment meets or is equal to one of the deemed-disabling impairments listed in the Commissioner's regulation. If so, the claimant is conclusively presumed to be disabled. Otherwise, the Commissioner asks at step four whether the claimant has the RFC to perform his past relevant work. If the claimant can return to past relevant work, he is not disabled. Otherwise, the burden of proof shifts at step five to the Commissioner to demonstrate that the claimant has the RFC to perform a significant number of other jobs in the national economy that are consistent with the claimant's vocational factors.

If a claimant can perform the full range of work in a particular category of work (very heavy, heavy, medium, light, and sedentary) listed in the Commissioner's regulations, the Commissioner may carry this burden by referring to the Commissioner's Medical-Vocational Guidelines, which are fact-based generalizations about the availability of jobs for people of varying vocational factors, with differing degrees of exertional impairment. Where a claimant cannot perform the full range of work in a particular category due to nonexertional impairments such as pain or depression, the Commissioner cannot carry the step-five burden by relying on the Guidelines, but must consider testimony of a VE as to the availability of jobs that a person with the claimant's profile could perform. Baker v. Barnhart, 457 F.3d 882, 888 n.2, 894-95 (8th Cir. 2006).

**ALJ's RFC Assessment and Weight Accorded to Medical Source Opinions**

Plaintiff argues that in assessing Plaintiff's RFC, the ALJ erred in discounting the March 10, 2008 RFC assessment of Dr. Chaudhry in favor of the September 25, 2006 RFC assessment of Dr. Ahmad; in failing to develop the record by re-contacting Dr.

16

Chaudhry for additional evidence or clarification; and in giving no weight to the state's finding of disability.

A disability claimant's RFC is the most he can still do despite his limitations. 20 C.F.R. § 404.1545(a)(1). In McCoy v. Schweiker, 683 F.2d 1138 (8th Cir. 1982) (en banc), the Eighth Circuit defined RFC as the ability to do the requisite work-related acts "day in and day out, in the sometimes competitive and stressful conditions in which real people work in the real world." Id. at 1147. The ALJ's determination of an individual's RFC should be "based on all the evidence in the record, including 'the medical records, observations of treating physicians and others, and an individual's own description of his limitations.'" Krogmeier v. Barnhart, 294 F.3d 1019, 1024 (8th Cir. 2002) (quoting McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000)).

Although a claimant's RFC is determined at step four of the sequential evaluation process, where the burden of proof rests on the claimant, the ALJ bears the primary responsibility for determining a claimant's RFC. Id. As noted, an RFC is based on all relevant evidence, but it "remains a medical question" and "'some medical evidence must support the determination of the claimant's [RFC].'" Id. at 1023 (quoting Hutsell v. Massanari, 259 F.3d 707, 711-12 (8th Cir. 2001)). The ALJ is therefore required to consider at least some supporting evidence from a medical professional. Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001).

The weight to be given a medical opinion is governed by a number of factors, including the examining or treatment relationship, the length of the treatment relationship

and frequency of examination, the consistency of the source's opinion, and whether the source is a specialist in the area. 20 C.F.R. § 404.1527(d). The ALJ is to give a treating medical source's opinion on the issues of the nature and severity of an impairment controlling weight if such opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." Id. § 404.1527(d)(2). However, an ALJ may "'discount or even disregard the opinion of a treating physician where other medical assessments are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions.'" Wildman v. Astrue, ___ F.3d ___, 2010 WL 760240, at *2 (8th Cir. March 8, 2010) (quoting Goff v. Barnhart, 421 F.3d 785, 790 (8th Cir. 2005)).

In the present case, the Court concludes that the ALJ was entitled to discount Dr. Chaudhry's March 10, 2008 RFC assessment. Dr. Chaudhry's progress notes from his examination of Plaintiff that day are both internally contradictory and inconsistent with his RFC assessment. They indicate that Plaintiff's "para spinal muscles were spastic and tender on palpation," but also state that Plaintiff suffered "no muscle pain, no spasms, no arthritis." In addition this comment in Dr. Chaudhry's progress notes appears to be inconsistent with his RFC assessment.

The checkbox format of Dr. Chaudhry's RFC assessment also entitles the ALJ to limit its evidentiary value. See Wildman (reiterating that a "'checklist format'" limits the "'evidentiary value'" of a medical source's assessment). 2010 WL 760240, at *3

18

(quoting Holmstrom v. Massanari, 270 F.3d 715, 721 (8th Cir. 2001)).

However, the ALJ's RFC assessment remains problematic in several regards. First, to the extent that the ALJ relied on Ms. Battel's RFC assessment, this was error as Ms. Battel is not a qualified medical professional. Second, although an ALJ is not bound by a state-agency determination that a claimant is disabled under state law, Cruze v. Chater, 85 F.3d 1320, 1325 (8th Cir. 1996), here it was error for the ALJ summarily to give "no weight" to the state determination, especially without having seen the bulk of the state's decision. See Ekeland v. Bowen, 899 F.2d 719, 721 (8th Cir. 1990) (holding that the ALJ erred by failing to give proper weight to the disability evaluation of the Iowa State Rehabilitation Facility); Falcon v. Heckler, 732 F.2d 827, 831 (11th Cir. 1984) (holding that the ALJ committed reversible error in not giving "great weight" to the disability determination of the state division of workers compensation, which defined disability similarly to the Social Security Act); cf. Chambliss v.Massanari, 269 F. 3d 520, 522 (5th Cir. 2001) (holding that the ALJ did not commit error in not according the VA's determination of disability little weight, where the ALJ gave specific reasons for doing so, such as the timing and conclusory nature of the VA's decision).

Third, given that the ALJ permissibly discounted Dr. Chaudhry's RFC assessment and could not rely on Ms. Battel's RFC assessment, the only remaining support for the ALJ's RFC assessment is Dr. Ahmad's evaluation of September 2006. This assessment, however, was completed eight months before the May 2007 radiographic scans ordered by Dr. Chaudhry, which showed "severe" osteoarthritic changes. Therefore, Dr. Ahmad

could not have taken this objective medical evidence into account when making his determination. Furthermore, Dr. Ahmad examined Plaintiff two years before the date of the evidentiary hearing, and he was a consulting doctor who only saw Plaintiff once. Generally, a one-time evaluation by a non-treating medical source is not entitled to substantial weight. Clark v. Apfel, 141 F.3d 1253, 1256 (8th Cir. 1998).

In sum, the Court finds that the ALJ's decision is not supported by substantial evidence. On remand, the ALJ should review a full copy of the Missouri Department of Social Services's medicaid determination, and give proper weight to the state disability determination or articulate his reasoning for discounting it. The ALJ should also reconsider Plaintiff's RFC, which might require further development of the record.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner be **REVERSED** and that the case be **REMANDED** for further proceedings.

AUDREY G. FLEISSIG
UNITED STATES MAGISTRATE JUDGE

Dated this 15th day of March, 2010.